Esther **KOSBERG**, Administratrix, Estate of Roberta Ann Clark, Appellant,

v.

**WASHINGTON HOSPITAL CENTER, INC., et al.,** Appellees.

No. 20792.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 15, 1968.

Decided April 18, 1968.

Mr. Philip Shinberg, Washington, D.C., for appellant.

Mr. John L. Laskey, Washington, D.C., for appellee, Washington Hospital Center.

Mr. Gerald W. Farquhar, Washington, D.C., for appellee, Klein.

Mr. J. Joseph Barse, Washington, D.C., for appellee, Rudnai.

Before BAZELON, Chief Judge, and BURGER and LEVENTHAL, Circuit Judges.

PER CURIAM:

This is a wrongful death, malpractice action. Decedent was a newly married, 22-year-old girl whose medical problems began with symptoms suggestive of pregnancy. She was successively treated by a series of three doctors: a general practitioner, a psychiatrist, and an internist. The general practitioner, a defendant here, treated decedent for "morning sickness" and malnutrition and, when she did not improve significantly, referred her to the psychiatrist for treatment of a suspected emotional problem. The psychiatrist, also a de-

fendant here, hospitalized decedent in defendant hospital and gave her electroshock therapy preceded and followed by administration of the drug thorazine. Decedent's condition thereupon became critical, and Dr. Schulman, the internist, was called in. He ordered various drugs for decedent, but she failed to respond and died two days after receiving the electroshock therapy.

Dr. Schulman was plaintiff's expert witness, and his opinion as to the cause of death differed in certain respects from the inferences arising during his cross-examination and from the testimony of Dr. Edmonds, the head of the hospital's autopsy service. At the close of plaintiff's case the trial judge directed verdicts for all three defendants. We affirm as to the hospital and the general practitioner but reverse as to the psychiatrist.

■ A *prima facie* case of medical malpractice must normally consist of evidence which establishes the applicable standard of care, demonstrates that this standard has been violated, and develops a causal relationship between the violation and the harm complained of.[1] Plaintiff's case against the hospital is deficient on all three of these particulars, while her case against the general practitioner is devoid of evidence on the third essential—assuming, without deciding, that the first two factors were present.[2]

■ Evidence of a standard of care and its violation was also lacking in the case against the psychiatrist. But plaintiff was prevented from supplying these essentials when the trial judge ruled that Dr. Schulman was not qualified to testify concerning electroshock therapy. We think this was error. The fact that an internist is not a specialist in psychiatry or neurology does not preclude him from testifying about the physical effects of electroshock therapy and the ability of a person in decedent's condition to withstand this treatment. See Baerman v. Reisinger, 124 U.S.App.D.C. 180, 363 F.2d 309 (1966). Such testimony, if believed by the jury, might have established both the standard of care and its violation.

■■ Moreover, on the third essential of plaintiff's case against the psychiatrist—evidence of causation—we think there was sufficient proof in the present state of the record to go to the jury. Dr. Schulman testified that in his expert opinion the cause of death was the consecutive administration of thorazine (a tranquilizer) and electroshock therapy to someone in decedent's weak condition.[3] Dr. Edmonds, who directed the autopsy, testified—in answer to questions by the judge—that in his view thorazine and electroshock standing alone would not have caused death, but that death was caused when this treatment was followed by administration of another drug, levophed, a combination that resulted in infarction of deceased's bowels.[4] Dr. Schulman contested that the levophed, which he himself had prescribed, contributed to death. Thus, there was a conflict in the testimony as

---

1. Rodgers v. Lawson, 83 U.S.App.D.C. 281, 282, 170 F.2d 157, 158 (1948) (doctor); Garfield Memorial Hospital v. Marshall, 92 U.S.App.D.C. 234, 239, 204 F.2d 721, 725, 37 A.L.R.2d 1270 (1953) (hospital).

2. Agency principles are of no help to plaintiff in establishing liability, since there is no suggestion in the record that any of the doctors involved was an agent of either the hospital or another of the doctors.

3. Later Dr. Schulman attributed the cause of death to electrolyte imbalance, depression, and phenothiazine reaction. Appel-

lees have failed to demonstrate that this testimony on causation was so inconsistent with the earlier testimony of Dr. Schulman as to render the whole testimony inconclusive and require removal of the case from the jury. *Compare* Quick v. Thurston, 110 U.S.App.D.C. 169, 290 F.2d 360, 88 A.L.R.2d 299 (1961) (*en banc*).

4. It is by no means clear that Dr. Edmonds was invited to take into consideration what Dr. Schulman's testimony assumed, namely, the already extreme condition of decedent at the time Dr. Schulman came on the case and prescribed levophed.

to the cause of death. But conflicts in the testimony of witnesses, including expert witnesses, called by a party are not necessarily fatal to his case.[5] The jury may assign a preference to one item of testimony over the other—a preference that may be based on differences in the hypothetical facts assumed by each expert and, in the last analysis, on depth and lucidity of expression.

Affirmed in part; reversed in part and remanded for a new trial.

5. *See* Diggs v. Lail, 201 Va. 871, 114 S.E.2d 743 (1960). *Compare* Mudano v. Philadelphia Rapid Transit Co., 289 Pa. 51, 137 A. 104 (1927). *See generally* Annot., 53 A.L.R.2d 1229 (1957).