**Peter L. JOHNSON, Appellant,**

v.

**UNITED STATES of America.**

**No. 74–2011.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 24, 1975.

Decided Dec. 2, 1976.

Patrick J. Moran, Washington, D. C., with whom David B. Lamb, Washington, D. C., was on the brief, for appellant.

Michael A. Pace, Asst. U.S. Atty., Washington, D. C., with whom Earl J. Silbert, U.S. Atty., John A. Terry and Eric B. Marcy, Asst. U.S. Attys., Washington, D. C., were on the brief, for appellee.

Before HASTIE,* Senior Circuit Judge for the Third Circuit, BAZELON, Chief Judge, and ROBINSON, Circuit Judge.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

*Senior Circuit Judge* Hastie participated in the consideration of this case but died before this opinion and judgment were filed.

PER CURIAM:

■ This appeal challenges a judgment of the District Court dismissing appellant's action against the United States for damages assertedly recoverable under the Federal Tort Claims Act.[1] Appellant's complaint, in two counts, charged false arrest, false imprisonment and medical malpractice. In pertinent part the first count alleged that

> [appellant] was a patient at the Veterans Administration Hospital, Washington, D. C. and while in that capacity [appellant] was wrongfully, maliciously and wantonly arrested and imprisoned against his will as a direct result of the actions of the defendants [sic][2] by its agents and/or employees in that the Veterans Administration Hospital by Stephen D. Quint, M.D. did wrongfully, falsely, maliciously and wantonly execute an application for emergency hospitalization and thereby commit [appellant] to St. Elizabeth's Hospital.
>
> As a result of the defendant's wrongful, wanton and malicious execution of said application for emergency hospitalization and commitment to St. Elizabeth's Hospital, [appellant] was wrongfully arrested and imprisoned against his will and without just cause or excuse, . . . .[3]

The second count relevantly avers that defendant by its agents and/or employees, Steven D. Quint, M.D., did wrongfully, carelessly, wantonly and negligently commit [appellant] to St. Elizabeth's Hospital by way of an application for emergency hospitalization which was executed by defendant, its agents and/or employees without complying with the reasonable medical standards of care required under the circumstances then existing.[4]

The complaint demanded both compensatory and punitive damages.[5]

The United States moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The District Court granted the motion. We affirm.

## I

Congress has, "[s]ubject to the provisions of" the Federal Tort Claims Act,[6] endowed the federal district courts with

> exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[7]

The Act specifies that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances,"[8] but excepts various types of claims,[9] including "[a]ny claim arising out of assault [or] false imprisonment" unless committed by federal investigative or law enforcement officers.[10]

1. Act of Aug. 2, 1946, ch. 753, § 402, 60 Stat. 842, as amended, 28 U.S.C. § 2671 *et seq.* (1970). The complaint invokes jurisdiction under 28 U.S.C. § 1346(b) (1970), quoted in pertinent part in text *infra* at notes 5–6.

2. The United States is the only defendant named in the complaint. See note 33 *infra.*

3. App. 1–2.

4. App. 2–3.

5. In no event, however, would the United States be liable for punitive damages. See 28 U.S.C. § 2674 (1970).

6. 28 U.S.C. § 1346(b) (1970).

7. *Id.*

8. 28 U.S.C. § 2674 (1970).

9. See 28 U.S.C. § 2680 (1970).

10. 28 U.S.C. § 2680(h) (1970).

It is by these provisions that the legal sufficiency of appellant's complaint is ultimately to be tested.

 The first count of the complaint alleges that appellant was "wrongfully, maliciously and wantonly arrested and imprisoned against his will" by the action of Dr. Quint, said to have been an agent of the United States, in "wrongfully, falsely, maliciously and wantonly execut[ing] an application for emergency hospitalization and thereby commit[ting] [appellant] to St. Elizabeth's Hospital."[11] Clearly, this count seeks damages from the United States solely on account of an arrest and a false imprisonment allegedly inflicted by one clearly not an investigative or law enforcement officer.[12] Just as clearly a cause of action therefor does not lie. Even were we to assume that a private physician guilty of the conduct charged in this count would become liable,[13] the insuperable difficulty which appellant faces is that the United States can be sued only within the limits of its consent.[14]

While the Federal Tort Claims Act "waived sovereign immunity from suit for certain specified torts of federal employees,"[15] it did so only so far as the Act provides,[16] and plainly the waiver of sovereign immunity does not extend to claims for arrest or false imprisonment.[17] It follows, then, that the District Court's dismissal of the first count was proper.

## II

The second count of the complaint differs, however, from the first, at least in form. It alleges that Dr. Quint "wrongfully, carelessly, wantonly and negligently commit[ted] [appellant] to St. Elizabeth's Hospital by way of an application for emergency hospitalization which was executed by [Dr. Quint] without complying with the reasonable medical standards of care required under the circumstances then existing."[18] Appellant contends that the cause of action asserted in this count is malpractice, which assuredly the Act does not bar.[19] The United States, on the other hand, argues that appellant's second claim, though captioned "malpractice," is in substance identical to the first, and thus falls within the statutory exclusion.

 As we have stated in the past, "the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states."[20] And surely a litigant cannot circumvent the Act by the simple expedient of drafting in terms of negligence a complaint that in

11. See text *supra* at note 3.

12. The first count of appellant's complaint plainly enough identifies Dr. Quint as one associated with the Veterans Administration Hospital. See text *supra* at note 3.

13. We do not mean to intimate that an action against such a physician would not encounter the problems discussed *infra* Part III.

14. E. g., *Honda v. Clark*, 386 U.S. 484, 501, 87 S.Ct. 1188, 1197, 18 L.Ed.2d 244, 254–255 (1967); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688, 69 S.Ct. 1457, 1460–1461, 93 L.Ed. 1628, 1635 (1949); *United States v. Shaw*, 309 U.S. 495, 500–501, 60 S.Ct. 659, 661, 84 L.Ed. 888, 891–892 (1940); *Reid v. United States*, 211 U.S. 529, 538, 29 S.Ct. 171, 172, 53 L.Ed. 313, 315 (1909).

15. *Dalehite v. United States*, 346 U.S. 15, 17, 73 S.Ct. 956, 959, 97 L.Ed. 1427, 1431 (1953).

16. See *Minnesota v. United States*, 305 U.S. 382, 388, 59 S.Ct. 292, 295, 83 L.Ed. 235, 241 (1939); *Bialowas v. United States*, 443 F.2d 1047, 1048–1049, 13 A.L.R.Fed. 756 (3d Cir. 1971); *Melo v. United States*, 505 F.2d 1026, 1028 (8th Cir. 1974).

17. See text *supra* at note 10. See also *Blitz v. Boog*, 328 F.2d 596, 598–599 (2d Cir.), *cert. denied*, 379 U.S. 855, 85 S.Ct. 106, 13 L.Ed.2d 58 (1964); *Klein v. United States*, 268 F.2d 63, 64 (4th Cir. 1959); *Vincin v. United States*, 468 F.2d 930, 932, 199 Ct.Cl. 762 (1972).

18. See text *supra* at note 4.

19. E. g., *Dinnerstein v. United States*, 486 F.2d 34, 35 (2d Cir. 1973); *Hicks v. United States*, 368 F.2d 626 (4th Cir. 1966); *United States v. Gray*, 199 F.2d 239, 242 (10th Cir. 1952).

20. *Aktiebolaget Bofors v. United States*, 90 U.S.App.D.C. 92, 95, 194 F.2d 145, 148 (1951).

reality is a claim as to which the United States remains immunized.[21] We are mindful, too, that both of appellant's counts allege that Dr. Quint caused him to be confined in Saint Elizabeths Hospital, and thus impart a superficial cast of sameness. On the other hand, false imprisonment historically has been viewed as an intentional tort;[22] notwithstanding liability for negligence causing a confinement when actual damage ensues,[23] only an act intended to impose confinement or known by the actor to be substantially certain of doing so generates the common law tort of false imprisonment.[24] It does not appear that the conduct alleged in the second count meets these specifications.[25]

■■■ We need not, however, inquire whether the Act, which plainly allows negligence claims[26] but just as plainly bars false imprisonment claims,[27] sets the line of demarcation between the two where the common law draws it. For we are satisfied that appellant's second count, viewed simply as the statement of a cause of action for negligence within the general compass of the Act, does not yield a claim upon which relief can be granted. A malpractice action does not lie unless the physician violates a duty of care owed the patient[28] nor, even, then unless the physician's breach of duty proximately causes the injury complained of by the patient.[29] By our assessment, the allegations of the second count of appellant's complaint, even if fully proven at a trial, would establish neither of these essential ingredients.

## III

■■■ A physician "who has reason to believe that [his patient] is mentally ill and, because of the illness, is likely to injure himself or others if he is not immediately detained" is statutorily empowered, without a warrant, "[to] take the [patient] into custody, transport him to a public or private hospital, and make application for his admission thereto for purposes of emergency

---

21. *E. g., Aktiebolaget Bofors v. United States, supra* note 20, 90 U.S.App.D.C. at 95, 194 F.2d at 148; *Blitz v. Boog, supra* note 17, 328 F.2d at 598–599; *United States v. Faneca*, 332 F.2d 872, 875 (5th Cir. 1964), *cert. denied*, 380 U.S. 971, 85 S.Ct. 1327, 14 L.Ed.2d 268 (1965).

22. See, *e. g.*, W. Prosser, Torts, § 12 at 48 (4th ed. 1971); Restatement (Second) of Torts, §§ 35, 43 (1965).

23. See, *e. g., Weaver v. Bank of America Nat'l Trust & Savs. Ass'n*, 59 Cal.2d 428, 30 Cal.Rptr. 4, 380 P.2d 644, 647 (1963); *Collins v. City Nat'l Bank & Trust Co.*, 131 Conn. 167, 38 A.2d 582, 585, 153 A.L.R. 1030 (1944); *Mouse v. Central Savs. & Trust Co.*, 120 Ohio St. 599, 167 N.E. 868, 871 (1929).

24. "[T]he actor is not liable unless his act is done for the purpose of imposing confinement upon the other, or with knowledge that such a confinement will, to a substantial certainty, result from it. It is not enough that the actor realizes or should realize that his actions involve a risk of causing a confinement, so long as the likelihood that it will do so falls short of a substantial certainty." Restatement (Second) of Torts § 35, comment *h* (1965).

25. The United States says that the element of intention is supplied by the allegations of the second count because, by that measure, Dr. Quint pursued a purpose to commit appellant

to Saint Elizabeths Hospital. But, as we later point out, there is no basis for an assumption that Dr. Quint expected that his activity alone would bring about appellant's confinement in the hospital, since by statute an additional procedure must forerun that result. See Part III *infra*.

26. See note 19 *supra* and accompanying text.

27. See text *supra* at notes 6–10.

28. *E. g., Canterbury v. Spence*, 150 U.S.App. D.C. 263, 276, 464 F.2d 772, 785, *cert. denied*, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972); *Kosberg v. Washington Hosp. Center*, 129 U.S.App.D.C. 322, 324, 394 F.2d 947, 949 (1968); *Price v. Neyland*, 115 U.S.App.D.C. 355, 358, 320 F.2d 674, 677, 99 A.L.R.2d 1391 (1963); *Christie v. Callahan*, 75 U.S.App.D.C. 133, 136, 124 F.2d 825, 828 (1942).

29. *Canterbury v. Spence, supra* note 28, 150 U.S.App.D.C. at 281, 464 F.2d at 790; *Kosberg v. Washington Hosp. Center, supra* note 28, 129 U.S.App.D.C. at 324, 394 F.2d at 949; *Day v. Providence Hosp.*, 105 U.S.App.D.C. 285, 266 F.2d 689 (1959); *Central Dispensary & Emergency Hosp. v. Harbaugh*, 84 U.S.App.D.C. 371, 372, 174 F.2d 507, 508 (1949).

observation and diagnosis." [30] The only additional requirement which the statute imposes upon the physician is that "[t]he application shall reveal the circumstances under which the person was taken into custody and the reasons therefor." [31] But notwithstanding the belief and reasons underlying the physician's application, the hospital is authorized to admit and detain a nonconsenting patient only "if the application is accompanied by a certificate of a psychiatrist on duty at the hospital stating that he has examined the person and is of the opinion that he has symptoms of a mental illness and, as a result thereof, is likely to injure himself or others unless he is immediately hospitalized." [32] The statute thus contemplates that the psychiatrist's certificate rather than the physician's application, will determine whether the patient will be confined for emergency observation and diagnosis.

The second count of appellant's complaint charges that he was "commit[ted]" to Saint Elizabeths Hospital upon an application executed by Dr. Quint "without complying with the reasonable medical standards of care required under the circumstances then existing." [33] But, as the statute explicates, the examination requirement preconditioning admission to and detention in the hospital is imposed upon the "psychiatrist on duty at the hospital" [34] and not upon the initiating physician.[35] Beyond that, the statute clothes the initiating physician with a privilege immunizing his role as the agency by which such examinations become possible.[36] He may "take the per-

**30.** "An accredited officer or agent of the Department of Public Health of the District of Columbia, or an officer authorized to make arrests in the District of Columbia, or the family physician of the person in question, who has reason to believe that a person is mentally ill and, because of the illness, is likely to injure himself or others if he is not immediately detained may, without a warrant, take the person into custody, transport him to a public or private hospital, and make application for his admission thereto for purposes of emergency observation and diagnosis. The application shall reveal the circumstances under which the person was taken into custody and the reasons therefor." D.C.Code § 21–521 (1973).

**31.** *Id.*

**32.** "Subject to the provisions of section 21–523, the administrator of a private hospital, may, and the administrator of a public hospital shall, admit and detain for purposes of emergency observation and diagnosis a person with respect to whom application is made under section 21–521, if the application is accompanied by a certificate of a psychiatrist on duty at the hospital stating that he has examined the person and is of the opinion that he has symptoms of a mental illness and, as a result thereof, is likely to injure himself or others unless he is immediately hospitalized. Not later than 24 hours after the admission pursuant to this subchapter of a person to a hospital, the administrator of the hospital shall serve notice of the admission, by registered mail, to the spouse, parent, or legal guardian of the person and to the Commission on Mental Health. D.C.Code § 21–522 (1973).

**33.** See text *supra* at note 4. We point out in passing that Dr. Quint, as a physician at the

Veterans Administration Hospital, could not be held individually liable even if in fact he were somehow negligent. 38 U.S.C. § 4116(a) (1970).

**34.** See note 32 *supra.*

**35.** This is the more apparent from the fact that the authority conferred by D.C.Code § 21–521, quoted *supra* note 30, extends not only to physicians but also to "[a]n accredited officer or agent of the Department of Public Health of the District of Columbia, or an officer authorized to make arrests in the District of Columbia . . . . ."

**36.** Physicians who participate in proceedings leading to a patient's hospitalization have been held immune from a liability on at least three different theories. In some cases the immunity has been predicated on the ground that court-appointed physicians are in effect judicial officers, as such entitled to a form of judicial immunity. E. g., *Bartlett v. Weimer,* 268 F.2d 860, 862 (7th Cir. 1959), *cert. denied,* 361 U.S. 938, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960); *Baer v. Smith,* 68 Cal.App. 716, 157 P.2d 646, 648 (1945); *Bromund v. Holt,* 24 Wis.2d 336, 129 N.W.2d 149, 152–153 (1964). Other cases, addressing situations wherein physicians have given testimony or furnished other types of evidence in connection with a commitment, have invoked the privilege for relevant testimony in judicial proceedings. E. g., *Mezullo v. Maletz,* 331 Mass. 233, 118 N.E.2d 356, 358–359 (1954); *Niven v. Boland,* 177 Mass. 11, 58 N.E. 282, 283 (1900); *Dabkowski v. Davis,* 364 Mich. 429, 111 N.W.2d 68, 69–70 (1961); *Springer v. Steiner,* 91 Or. 100, 178 P. 592, 596 (1919); *Bailey v. McGill,* 247 N.C. 286, 100

son [suspected of mental illness] into custody, transport him to a public or private hospital, and make application for his admission thereto for purposes of emergency observation and diagnosis" if three stipulations are met: (a) prior to assumption of custody, he believes the patient to be mentally ill and likely to injure himself or others if not immediately detained; (b) the belief is reasonable; and (c) he discloses in the application for hospitalization the circumstances under which the patient was taken into custody and the reasons therefor.[37] The second count of appellant's complaint in no way disputes complete satisfaction of these statutory demands by Dr. Quint.[38]

From aught that appears from appellant's second count, then, Dr. Quint dishonored no examinatory obligation to appellant with respect to his confinement at Saint Elizabeths Hospital, for that obligation was imposed upon "a psychiatrist on duty" there.[39] Besides, the allegation that Dr. Quint did not "comply [ ] with the reasonable medical standards of care required under the circumstances then existing" is in no way inconsistent with the theory that

Dr. Quint complied fully with the statutory standard of "reason to believe"[40] and the two remaining requirements,[41] and thus remained well within the privilege which the statute confers, when he tendered appellant for admission to the hospital.[42] And in any event, it is apparent that as a matter of law Dr. Quint's disregard of medical standards, if any there was, could not legally have put appellant into the hospital. By the terms of the statute, the indispensable prerequisite to confinement for emergency observation and diagnosis, as distinguished from the preliminaries of transportation and application, was the certification by a psychiatrist at the hospital, based upon his own examination of appellant, that he had symptoms of mental illness and that as a result he was likely to injure himself or others if not immediately hospitalized.[43] There is no reason why Dr. Quint, in conducting himself as he did, could not have relied upon this required procedure as the mechanism by which the matter of appellant's admission to Saint Elizabeths Hospital would ultimately be determined.[44] But whether he did or not, the intervening action of the hospital psychiatrist was an in-

---

S.E.2d 860, 868–869 (1957). Still others have extended sovereign immunity to examining physicians employed by a governmental agency. See *Fish v. Regents of Univ. of California,* 246 Cal.App.2d 327, 54 Cal.Rptr. 656, 660 (1966); *Morris v. Nowotny,* 323 S.W.2d 301, 311 (Tex.Civ.App.), *cert. denied,* 361 U.S. 889, 80 S.Ct. 164, 4 L.Ed.2d 124 (1959). In the case at bar, the statute settles the matter. See note 32 *supra* and text *infra* at note 37.

**37.** See note 32 *supra.*

**38.** Appellant was a patient, and Dr. Quint a physician, at the Veterans Administration Hospital. See text *supra* at note 3. It thus seems clear that Dr. Quint was "a physician of the person in question" to whom the privilege inures. See note 32 *supra.* Appellant's second count seeks to fasten liability on the United States by reason "of an application for emergency hospitalization which was executed by" Dr. Quint. See text *supra* at note 4. That count does not venture to challenge the existence of either of the three preconditions set forth in text. See notes 48–49 *infra* and accompanying text. And since the second count attributes appellant's alleged damages wholly to his confinement at Saint Elizabeths Hospital,

and since negligence is actionable only if loss ensues, *e. g. Mitchell v. White Consol.,* 177 F.2d 500, 503 (7th Cir. 1949), *cert. denied,* 339 U.S. 913, 70 S.Ct. 574, 94 L.Ed. 1339 (1950); *Todd Shipyards Corp. v. Harborside Trading & Supply Co.,* 91 F.Supp. 462 (E.D.N.Y.1950), there is no occasion to consider whether in any event there could be liability for the act of transporting him to the hospital.

**39.** See note 32 *supra.*

**40.** See note 32 *supra.*

**41.** See text *supra* at note 37.

**42.** It is clear that the United States, as Dr. Quint's principal, is protected if Dr. Quint's participation was privileged. *May v. Palm Beach Chem. Co.,* 77 So.2d 468, 472 (Fla.1955); *Tallios v. Tallios,* 345 Ill.App. 387, 103 N.E.2d 507, 508 (1952); *Poynter v. County of Otter Tail,* 223 Minn. 121, 25 N.W.2d 708, 712 (1947).

**43.** See note 32 *supra.*

**44.** Compare *Ingo v. Koch,* 127 F.2d 667, 670 n.3 (2d Cir. 1942).

dependent efficient cause, and thus legally the proximate cause, of appellant's confinement.[45] And nowhere does appellant's complaint allege any wrongdoing on the part of Saint Elizabeths Hospital or its staff.[46]

A complaint charging negligence is fatally flawed by an omission to set forth all of the essential elements of the claim.[47] That is the case, too, when a valid affirmative defense—here statutory privilege and resulting immunity—becomes apparent from the face of the complaint.[48] While we are mindful that appellant's complaint does not facially disclose the existence of all conditions essential to invocation of the privilege, we cannot overlook its vulnerability to the United States' motion to dismiss when treated as a motion for summary judgment.[49] We hold that the District Court properly dismissed the second count as well as the first.[50]

The judgment appealed from is accordingly

*Affirmed.*

---

**45.** Compare *Ingo v. Koch, supra* note 44, 127 F.2d at 670 n.3; *Niven v. Boland, supra* note 36, 58 N.E. at 282–283; *Mezullo v. Maletz, supra* note 36, 118 N.E.2d at 358; *Ussery v. Haynes,* 344 Mo. 530, 127 S.W.2d 410, 417 (1939).

**46.** Consequently, there is no room for analogous application of the principle that one who commits a tort necessitating medical care is liable for damage resulting from negligence of the treating physician. See, *e. g., Fletcher v. Hand,* 123 U.S.App.D.C. 182, 185, 358 F.2d 549, 552 (1966).

**47.** "The traditional elements of a claim for negligence are defendant's duty to plaintiff, his breach thereof, and the injury to plaintiff that results from such breach, together with a statement of the resulting damage. These elements are *as essential under modern pleading* as they ever were, and a complaint should indicate that each of the elements is present in order to be sufficient." 5 C. Wright & A. Miller, Federal Practice § 1249 at 227–228 (1969) (footnotes omitted). See also *Wooldridge Mfg. Co. v. United States,* 98 U.S.App.D.C. 286, 287, 235

F.2d 513, 514 (1956); *Johnson v. Weyerhaeuser Co.,* 189 F.Supp. 735, 736 (D.Or.1960).

**48.** *W. E. Hedger Transp. Corp. v. Ira S. Bushey & Sons,* 186 F.2d 236, 237 (2d Cir. 1951); *Williams v. Murdoch,* 330 F.2d 745, 749 (3d Cir. 1964); *Herron v. Herron,* 255 F.2d 589, 593 (5th Cir. 1958); *Wallingford v. Zenith Radio Corp.,* 310 F.2d 693, 694–695 (7th Cir. 1962).

**49.** See Fed.R.Civ.P. 12(b).

**50.** We are mindful that leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, the record reflects no effort by appellant to obtain leave to amend from the District Court, nor does his brief in this court indicate any desire to do so, or what circumstances he could allege that would eliminate the legal obstacles to maintenance of his suit. Compare *Blake Constr. Co. v. American Vocational Ass'n,* 136 U.S.App.D.C. 6, 11 n.28, 419 F.2d 308, 313 n.28 (1969).