**Thrace Thompson KIRBY, as Administratrix of the Estate of Randy Thompson Kirby, Plaintiff,**

v.

**The UNITED STATES of America, Defendants.**

Civ. A. No. 78–1060.

United States District Court,
D. South Carolina,
Columbia Division.

May 23, 1979.

Henry W. Kirkland, Hugh S. Roberts, Columbia, S. C., for plaintiff.

Jack L. Marshall, Asst. U. S. Atty., Columbia, S. C., for defendants.

ORDER VACATING THIS COURT'S
ORDER OF OCTOBER 30, 1978

HEMPHILL, District Judge.

Pursuant to a Motion for Reconsideration filed November 10, 1978, Plaintiff moved this Court for reconsideration of this Court's Order of October 30, 1978, asked that same be vacated, and in lieu of the dismissal, direct that the motion to dismiss,

which predicated the Court's Order of October 30, 1978, be denied. The Court has duly reconsidered.

By necessity, a statement of the facts which gave rise to this action must be repeated. On June 29, 1978, Thrace Thompson Kirby, Administratrix of the Estate of Randy Thompson Kirby, and thus fiduciary Plaintiff, instituted this action for the alleged wrongful death of her deceased under the provisions of Section 15–51–10, South Carolina Code, 1976, anno.[1] Complaint alleges that the deceased on August 6, 1975 was riding in a vehicle on a highway in the State of South Carolina and was involved in a collision; the deceased was injured in the accident and an officer of the United States Army directed a named enlisted man to take deceased to the Moncrief Army Hospital located on the property of Fort Jackson Army Training Center; enroute the enlisted samaritan drove at a high speed, lost control of the vehicle transporting the deceased and collided with a concrete abutment and/or trees causing the death of 19-year old Randy Kirby. Defendant, of course, does not admit the allegations of the Complaint and denies same.

It appears that the alleged claims for wrongful death and painful suffering[2] (by inference) occurred immediately upon injury and death of deceased August 6, 1975. Plaintiff's claim for damages, and injury or death (Standard Form 95) was received by four government agencies; the United States Attorney for the District of South Carolina received the claim on August 8, 1977; the Department of Defense received the claim on August 9, 1977; the Secretary of the Army received the claim on August 10, 1977; the Claims Officer, Office of the Staff Judge Advocate, Fort Jackson, South Carolina, received the claim on August 9, 1977.[3]

There is no doubt about the fact that the United States "[A]s sovereign, is immune from suit save as it consents to be sued, . . . and the terms of its consent to be sued in any court defines that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586–87, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). Statutes conferring federal jurisdiction are to be strictly construed, and doubts as to jurisdiction are to be resolved against federal jurisdiction. *Johnson v. United States,* 178 U.S.App.D.C. 391, 547 F.2d 688 (1976); *Russell v. New Amsterdam Casualty Co.,* 325 F.2d 996 (8th Cir. 1964); *F & S Construction Co. v. Jensen,* 337 F.2d 160 (10th Cir. 1964); *Honda v. Clark,* 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967); and *United States v. Orleans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976).

This Court initially recognizes that the United States District Courts are courts of statute (i. e., limited jurisdiction) whose movements, processes, jurisdiction, venue and other authority are given by the Congress in the form of statutes, or by the Constitution. This is an action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, et seq., and such statutes confer upon this Court the authority to entertain such claims against the United States or its various subdivisions. One of the conditions upon the limited waiver of sovereign immunity established by the Federal Tort Claims Act is the requirement of 28 U.S.C. § 2401(b), which provides:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of

---

1. This is the wrongful death statute of South Carolina as recited in the October 30, 1978 Order.

2. Section 15–5–90, South Carolina Code, 1976, anno. provides for survival of right of action for injuries. This is also recited in the October, 1978 Order.

3. The last sentence detailing the dates and times of receipt of the claim was taken from the brief in support of the government's motion for an Order of Dismissal.

notice of final denial of the claim by the agency to which it was presented.

█ It is undisputed that the last day for filing the claim (Form 95) was August 7, 1977.[4] The government claims that at the earliest date a claim was received by a proper agency, the United States Army, was August 9, 1977 although the government admits that the United States Attorney's Office received a claim on August 8th. It is also uncontradicted that August 7th was on a Sabbath and, no one, I repeat no one, would expect the government to function on a Sabbath.[5] However, since the government does not function on the Sabbath, (herein, August 7, 1977) the last possible date for the receipt of the claim would thereby be extended to Monday, August 8, 1977, same being the date on which the United States Attorney for the District of South Carolina received the claim as was previously set out herein.

The Federal Rules of Civil Procedure provide "for the issuance and service of process, for the service and filing of pleadings and other papers, and for computation and enlargement of the time prescribed or allowed for the doing of various procedural acts." [6]

Rule 1 of the Federal Rules of Civil Procedure for the United States District Courts specifically sets out the purpose of the rules in the last sentence of the rules:

.   .   .   They shall be construed to secure the just, speedy and inexpensive determination of every action.

Rule 6 of the Federal Rules of Civil Procedure is clearly applicable in this instance. The underlying purpose of Rule 6 is "to provide general guidelines and reasonable flexibility concerning the measurement of time periods under the federal rules, court orders and a number of statutes." (i. e., Federal Tort Claims Act, 28 U.S.C. § 2401(b)) Wright & Miller, *Federal Prac-*

*tice and Procedure: Civil* § 1161 (1969) as amended. Rule 6(a) sets out the following with regard to computation of time:

(a) Computation.—In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday or legal holiday.

This rule has a legislative authority so it has the force and effect of a legislative enactment. *Johnson v. Harper,* 66 F.R.D. 103 (D.Tenn.1975). The provision of the rule in computing time providing that the last day of the period shall be included unless it is Saturday or Sunday, was not changed or made inapplicable where the Clerk's Office had been ordered to be open for business on Saturday mornings. *Jones & Laughlin Corp. v. Gridiron Steel Co.,* 86 S.Ct. 152, 382 U.S. 32, 15 L.Ed.2d 26 (1965). The day of the act from which the statute of limitations begins to run is not included in computing the statutory period. *Bulls v. Holmes,* 403 F.Supp. 475 (D.Va.1975).

This Court held in *Mahler v. Drake,* 43 F.R.D. 1 (D.S.C., 1967) that "The rules of federal procedure are not strict, or restricting mandates." The Court went further in explaining the rationale for its holding, stating in part that:

The Federal Rules indicate a general policy to disregard technicalities and form and to determine rights of litigants on the merits, and to that end are to be liberally construed .   .   . Among the avowed purposes of liberality in rule construction and application are the avoid-

---

4. The Plaintiff and Defendant, in their respective briefs, give this as the expiration date.

5. There are a few people who surmise that some government employees do not function too well the rest of the week.

6. 32 Am.Jur.2d, *Federal Practice and Procedure* § 419 (1967).

ance of unnecessary litigation, . . . and the promotion of just, speedy and inexpensive justice.

The *Mahler* case, supra, cites the Remarks of Walter L. Brown, Esquire, of Huntington, W.Va., at the Fourth Circuit Judicial Conference, 25 *A.B.A.J.* 602 (1939) as standing for the proposition that, "the courts are treating the rules as tools to be used in the administration of justice instead of mandates to be construed and applied strictly."

This Court has previously adopted the liberal construction of the application of the rule in order that litigants be given opportunity to be heard and given their day in court so that justice may be served. *Anderson v. Stanco Sports Library, Inc.*, 52 F.R.D. 108 (D.S.C.1971). Unfortunately, this ruling was not appealed nor was the ruling in *Wirtz v. Local Union 611*, 229 F.Supp. 230 (D.C.Conn.1964) which also called for a liberal construction. This Court, therefore, does not have the benefit of appellate wisdom and this court can find no authority that it has the right to excuse the failure to file the claim within the time prescribed by the Congress.

The case of *Rodriguez v. United States*, 382 F.Supp. 1 (D.Puerto Rico, 1974) involved a cause of action that was brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2401(b). In that instance, the Court found that the applicable statute of limitations would have run on a Saturday, and, thus held, that the period of limitations would therefore run until the Monday thereafter. The Court stated in pertinent part that:

. . ., the statutory period of limitations established by Section 2401(b) was enacted in 1966 without any indication that the policy of Rule 6(a) of the Federal Rules of Civil Procedure in effect at that time, should not apply. Therefore, we hold as in the above cited case of *Wilkes v. United States*, 192 F.2d 128 (5th Cir., 1951), that in waiving the immunity of the United States to be sued, Congress

intended that the allotted time should be computed as provided in Rule 6(a) of the Federal Rules of Civil Procedure.

*Prince v. United States*, 185 F.Supp. 269 (D.C.E.D.Wis.1960) upheld the majority rule that Rule 6(a) is to be used in computing the statute of limitations applicable to the Federal Tort Claims Act, 28 U.S.C. § 2401(b).

As found in Wright & Miller, *Federal Practice and Procedure: Civil* § 1163 (1969) as amended, Rule 6 is applicable to federal statutes of limitations in the majority of the states.

This conclusion seems based on the premise that Rule 6 expresses the liberal spirit of the federal rules and their quest to avoid 'setting traps for the unwary' and that this spirit should be employed in construing statutes of limitation; an alternative argument is that the computation provisions of Rule 6 inherently are fair and practical.

This section went further in pointing to the fact that there is little if any chance for prejudice in a situation such as the one at hand and further explicated that:

It is difficult to perceive how a legitimate governmental interest would be prejudiced by the application of Rule 6(a) to federal statutes of limitation. The exclusion of final Saturdays, Sundays and legal holidays would delay the expiration of a given period by, at most, two or three days, which is unlikely to inconvenience or prejudice anyone.

Wright & Miller, supra.

■ Plaintiff positions that the obvious fact that he mailed the claims prior to the expiration date[7] is sufficient to accomplish "filing" for the full purpose of tolling the statute of limitations, if such is really an issue. This would be sufficient if the claim were against the Postal Service because, under the Code of Federal Regulations,[8] the placing of the claim form in the mail, properly addressed and with proper postage, within the limitation period is sufficient in

---

7. This is not contested by the government.

8. 39 C.F.R. 912.5.

those cases where the Post Office is the responsible agency. This is not a suit against the government because of activities of the Postal Service, but is against the United States by virtue of the activities of the United States Army. In *Steele v. United States*, 390 F.Supp. 1109 (S.D.Cal.1975), this point was specifically treated by the court holding:

> Plaintiff has failed to demonstrate to the Court that the act of depositing an envelope in the mailbox is equivalent to receipt by a federal agency, much less "presentment" within the meaning of the controlling statutes.

The opinion went on to recite that the Postal Service is neither acting as agency for the United States nor (in that instance) the EFFA for purposes of receiving administrative claims. It has long been the law that mailing is not sufficient to accomplish a filing.[9] *United States v. Lombardo*, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916). We now turn to the Code of Federal Regulations[10] where we find in Title 28, Section 14.2(a), the following:[11]

> (a) For purposes of the provisions of section 2672 of Title 28, United States Code, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident. *If a claim is presented to the wrong Federal agency, that agency shall transfer it forthwith to the appropriate agency.* (emphasis added)

Admittedly, this is a tort claim under the jurisdiction of an administrative agency of the United States. It is admitted that the claim was filed with the United States Attorney on August 8, 1977, within the statute of limitations. The statute provides that if claim was presented to the wrong federal agency, the agency shall transfer claim forthwith to the appropriate agency. Apparently this was done, and, hence, the claim was properly filed.

We have no case law to the effect that the filing with the wrong agency, to be forwarded to the appropriate agency, is sufficient. Nor do we have any case law to the contrary. Exactly what the agencies of the United States intended by this regulation is, at this point, somewhat nebulous. However, under a liberal construction, this court feels that the filing was sufficient, as the United States Attorney, the attorney now, and who was the attorney then, for the appropriate agency, as evidenced by the pleadings in this case, was the recipient of the claim on the proper date.

The Order of October 30, 1978, is vacated, and the Motion to Dismiss is denied for the reasons hereinabove stated.

AND IT IS SO ORDERED.

---

9. Note that filing is required under the terms of the statute.

10. The Code of Federal Regulations is a codification of the general and permanent rules published in the Federal Register by the executive departments and the agencies of the federal government.

11. 28 U.S.C. § 2672 describes the authority for the administrative adjudication for the claims against the United States.