William C. McARTHUR, Plaintiff,

v.

Tommy ROBINSON, Individually and in his official capacity as Sheriff of Pulaski County, and Larry Dill, Individually and in his official capacity as Deputy Sheriff of Pulaski County, Arkansas, Defendants.

No. LR–C–83–93.

United States District Court, E.D. Arkansas, W.D.

July 22, 1983.

See also, D.C., 563 F.Supp. 393.

Philip E. Kaplan, Kaplan, Hollingsworth & Brewer, Wm. R. Wilson, Jr., Wilson & Engstrom, Little Rock, Ark., for plaintiff.

James M. Sayes, of Tom Forest Lovett, P.A., Little Rock, Ark., Robert L. Roddey, Wallace, Hilburn, Clayton, Calhoon & Forster, Ltd., North Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

William C. McArthur, a prominent Little Rock attorney, filed suit in this Court on February 2, 1983, against Tommy Robinson, the Sheriff of Pulaski County, Arkansas, and Larry Dill, a Deputy Sheriff. It is alleged that the Sheriff and Deputy Sheriff, acting under color of state law and in their official capacities, beginning on or before August 30, 1982, unlawfully conspired between themselves and others to deprive the plaintiff of "fundamental rights secured to him and other citizens under the United States Constitution." Plaintiff alleges that on August 30, 1982, the defendants caused his arrest without a warrant on a charge of conspiracy to commit capital felony murder in connection with the death of plaintiff's wife, Alice McArthur, who had, a few months before, been found in the couple's home brutally slain. Plaintiff claims that, in addition, on January 30, 1983, without adequate probable cause to support a criminal charge and without adequate investigation, the defendants again caused the arrest of McArthur on a charge of criminal conspiracy to commit capital felony murder in connection with an alleged plot to kill Sheriff Robinson.

It is alleged in the complaint that defendants' actions deprive plaintiff McArthur of certain rights secured by the Fourteenth Amendment to the United States Constitution and that, thus, this Court has jurisdiction under the provisions of 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 1343(3) and (4). Plaintiff prays for: a declaratory judgment declaring that the actions of the defendants have violated plaintiff's constitutional rights; for an injunction restraining the defendants from committing future acts violating his rights; for an award of monetary judgment in his favor, both compensatory and punitive, in an amount to be determined by the proof; and for costs, attorneys' fees and expenses incurred.

During trial preparation, a number of discovery problems and arguments about discovery have arisen between the parties and counsel for the parties. Presently before the Court and unresolved are discovery issues which may be categorized as follows:

A. Defendants' motion to compel plaintiff to produce telephone records from his law practice for each month of 1982, appointment calendars for 1982 and 1983, time tickets and time logs for 1981, 1982 and 1983, and bookkeeping and accounting records for 1980, 1981, 1982 and 1983.

B. Darrell Brown's motion to limit scope of discovery and the filings associated therewith.

C. Plaintiff's motion to compel defendants to produce index and summaries.

The Court's ruling on each of the categories outlined above is as follows:

A. Defendants' Motion to Compel Plaintiff to Produce Telephone Records From His Law Practice for Each Month of 1982, Appointment Calendars for 1982 and 1983, Time Tickets and Time Logs for 1981, 1982 and 1983, and Bookkeeping and Accounting Records for 1980, 1981, 1982 and 1983.

■ Through the means of interrogatories propounded in this case, the defendants, Robinson and Dill, request that the plaintiff, McArthur, produce the documents and things listed above. Plaintiff respond-ed by refusing to answer these interrogatories and in support of this refusal contended that the production of same would violate the attorney-client privilege. The Court does not believe that this contention has merit. In order for the attorney-client privilege to apply, the material must involve (1) a communication, (2) which concerns the seeking of legal advice, (3) between attorney and client acting as such, (4) relating to legal matters, and (5) is being protected at client's insistence. *FTC v. Shaffner*, 626 F.2d 32 (7th Cir.1983). The courts have generally held that the privilege is to be strictly construed. *Radiant Burners, Inc. v. American Gas Association*, 320 F.2d 314 (7th Cir.1963).

■ The Court finds that none of these items requested involve a communication of a confidential legal matter. The attorney-client privilege, in the Court's view, does not apply. *See also Key Numbers 1600.1, Federal Civil Procedure.*

■ However, the Court believes that the interrogatories in this respect are, to say the least, overbroad. It is recognized that Rule 26 of the Federal Rules of Civil Procedure has been liberally (probably too liberally) construed, almost to the point of allowing almost anything to be discovered. However, the only conceivable argument (and the one that the defendants make) for the discovery of the requested information is that it is necessary to show whether plaintiff has, in fact, had a loss of income from his law practice as claimed because of the alleged improper actions on the part of the defendants. The Court cannot see how it is necessary to require the plaintiff to disclose all telephone records during 1982, copies of all appointment calendars during 1982 and 1983, and copies of all time tickets and time logs from plaintiff's law practice for the years 1981, 1982 and 1983 in order for the defendants to determine whether he has, in fact, had a loss of income. How can telephone records, even arguably, show whether there was a loss of income? It is possible for one telephone call to result in a large fee and a hundred telephone calls to result in a small fee or no fee at all. By the

same token, how can copies of the appointment calendars show anything about the income of the plaintiff? Also time tickets and time logs do not necessarily reflect income of an attorney, given the nature of most law practices. Since these records do not even conceivably have anything to do with this lawsuit other than the loss of income issue, defendants' request for these items will be denied.

However, defendants are entitled to discover through properly limited discovery the books and records of the plaintiff which are necessary to show whether he did, in fact, lose income because of the alleged actions of defendants. The interrogatory requesting copies of plaintiff's "accounting and/or bookkeeping records from his law practice for each month during the year 1980, 1981, 1982 and 1983" is, again, too broad. This presumably would require plaintiff to produce every piece of paper which in any way relates to his accounting or bookkeeping records. As every lawyer who has ever handled a personal injury case knows, there are much more effective ways to determine loss of income. Obviously, income tax returns and properly identified accounting or bookkeeping records showing specifically the income of the plaintiff would be discoverable. However, the Court will not try to delineate the types of records that would be discoverable since that issue is not now properly before the Court. Suffice it to say that the request for all accounting and bookkeeping records is too broad. If additional filings are made in respect to this issue, the Court will rule.

B. Darrell Brown's Motion To Limit Scope of Discovery and the Filings Associated Therewith.

By subpoena duces tecum issued by the Clerk of this Court on June 7, 1983, Darrell F. Brown, who had been appointed on February 2, 1983, Special Prosecutor to the Pulaski Grand Jury with the specified function of advising and counseling the Grand Jury during its investigation into the events leading up to and surrounding the death of Alice McArthur, was commanded to bring certain documents to a deposition sched-

uled. Mr. Brown had been discharged as Special Prosecutor on June 6, 1983, after the Grand Jury returned a "no true bill" on April 28, 1983. The subpoena duces tecum specifically commanded that he bring the following:

All documents, recordings, print-outs, and items of any nature whatsoever in your possession or subject to your possession pertaining to the "Bill McArthur investigation", relating to the Alice McArthur bombing or homicide, and/or any other data of any nature whatsoever pertaining to Bill McArthur.

(The above request excepts any material which might be subject to a privilege which may apply to grand jury proceedings—if any such material there be, and if any such privilege obtains.)

On June 22, 1983, Mr. Brown appeared for the purpose of giving his deposition, but refused to answer certain questions and refused to bring to the deposition or to produce the documents and things requested in the subpoena duces tecum. Prior to his deposition, he had filed a motion seeking an order of the Court in relation to his duty and, in fact, right to produce the things requested. During the course of the deposition, the counsel for the parties, in a conference call, conferred with the Court and the Court ordered an inventory of those items in deponent's possession relating to the Grand Jury investigation, but delayed ruling on the propriety of the deponent being deposed regarding the contents of those items and the production of them. The parties were directed not to delve into those matters until the Court had had a chance to review the inventory and to issue a specific ruling in relation thereto.

Subsequent to that time, all of the parties have filed various motions and briefs in relation to this issue. Both the plaintiff and the defendants have requested that the Court require Mr. Brown to produce the documents and things and to give testimony in relation thereto. In fairness, it should be pointed out at this point that Mr. Brown, throughout this controversy, has made it clear that it was not his desire or intent to

withhold discoverable information, but rather that he only wished to have this Court clarify and determine and define the limits, if any, of discovery that would be permitted. In other words, Mr. Brown does not contend that he should not and will not produce the information if the Court desires, but only wishes the Court to make specific rulings so that he will not violate in any manner his duties imposed by law in respect to his function as a Special Prosecutor to the Grand Jury.

The Grand Jury inventory produced by him is as follows:

1. Grand Jury research, for preparation and guidance.
2. Letters from various persons concerning Grand Jury proceedings.
3. Blank orders and copies of signed orders.
4. Public information regarding County Court.
5. Sonny Dillahunty · memorandum regarding fee and appropriations.
6. Strategy regarding Pulaski County Grand Jury investigation; for personal use.
7. Memorandum stating Darrell F. Brown requested assistance from State Police.
8. Memorandum from Captain Lewis regarding persons being investigated.
9. Documents and summaries regarding witness interviews.
10. Memorandum regarding questionable expenditures of PCSO.
11. Grand Jury witness list.
12. Question List for witnesses.
13. Charge for a grand jury.
14. Information collected concerning jails and correction facilities in Pulaski County.
15. Transcription of witness interview (L.R.P.D.).
16. Transcription of conversation with law enforcement officer.
17. Transcription of conversations with prospective witnesses.
18. Diagram of bomb.
19. Video and tape recordings containing conversations and interviewing witnesses and prospective witnesses relating to McArthur investigation *and* incidental conversations not connected with the investigation.
20. Pulaski County law enforcement agencies statistics.
21. List of Grand Jury duties.
22. Partial summaries of conversations with law enforcement personnel.
23. Minutes of Quorum Court.
24. Draft of Grand Jury Report.
25. Prosecuting Attorney letter.
26. Data collected regarding Pulaski County institutions and offices.
27. Inventory lists of items released to Dub Bentley.
28. Correspondence from attorneys for William A. McArthur and Tommy Robinson.
29. Notes from Grand Jury proceedings.
30. Personal notes and memoranda prepared during course of investigation; used for purpose of review of evidence, preparation for questioning of witnesses and interviews.

In his motion and briefs filed in relation to this issue, Mr. Brown contends that the material sought is work product (June 23 motion for protective order). In his July 5, 1983, motion to limit the scope of discovery, Mr. Brown also asserted the grand jury privilege. However, in the June 23 motion he asserted that "these items were collected for the Special Prosecutor's personal use and were not offered to the grand jury, nor were they related to grand jury testimony during the investigation into the slaying of Alice McArthur."

■ The question has been raised whether federal law applies to the grand jury privilege or whether state law applies. Rule 501, Fed.R.Evid., provides that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of deci-

sion, the privilege of a witness ... shall be determined in accordance with State law." Since a section 1983 action is not an action wherein state law supplies the rule of decision, it would seem that federal law governs. Nonetheless, the parties point out Ark.Stat.Ann. §§ 43–905, 43–927, 43–928, which require that grand jurors not disclose any evidence given before the grand jury, and to keep secret anything any grand juror may have said or how they voted. Section 43–905 merely requires court reporters to keep the proceedings separate. The Court holds that federal law applies.

The federal law in this regard is based upon Rule 6(e) of the Federal Rules of Criminal Procedure which states that there shall be no disclosure of "matters occurring before the grand jury" unless otherwise provided by the rules. Rule 6(e)(2). Rule 6(e)(3)(C) provides that disclosure may, however, be made "(i) when so directed by a court preliminarily to or in connection with a judicial proceeding."

Supreme Court decisions have held that disclosure may be ordered of "matters occurring before the grand jury" where there is a showing of particularized need. Thus, if the materials are "matters occurring before the grand jury," Rule 6(e) applies and a "particularized need" must be shown. If not "matters occurring before the grand jury," there is no privilege at all, as Rule 6(e)(2) provides "No obligation of secrecy may be imposed on any person except in accordance with this rule." Therefore, what constitutes "matters occurring before the grand jury" is the key.

Courts have not been startlingly clear in this regard. Broad language such as whether the revelation would or would not disclose the inner workings of the grand jury is found. *Fund for Constitutional Government v. National Archives,* 656 F.2d 856 (D.C.Cir.1981). In *In re Grand Jury Matter,* 682 F.2d 61 (3rd Cir.1982), the Court upheld disclosure of tapes, videos, documents and prosecution memoranda summarizing information because the materials were not "generated by" the grand jury. In *In re Grand Jury Investigation,*

630 F.2d 996 (3rd Cir.1980), the Court held that "the mere fact that a particular document is reviewed by a grand jury does not convert it into a 'matter occurring before the grand jury' within the meaning of 6(e)."

■ If obtained from a source independent of the grand jury proceeding, such as prior investigation, there is no privilege. A discussion of actions taken by government attorneys or officials, *i.e.,* recommendation by Justice Department attorney to Department officials that an indictment be sought against an individual, does not reveal any information about "matters occurring before the grand jury." Nor does a statement of opinion as to an individual's potential criminal liability violate the secrecy rule. *In re Grand Jury Investigation,* 610 F.2d 202 (11th Cir.1980). It has been held that only when some secret aspect of the grand jury investigation will be revealed is the rule applicable. *In re Special February, 1975, Grand Jury,* 662 F.2d 1232 (7th Cir. 1981).

■ The better approach, however, is that when testimony or data is sought for its own sake—for its intrinsic value in furtherance of a lawful investigation—rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same documents had been or were presently being examined by a grand jury. *U.S. v. Stanford,* 589 F.2d 285 (7th Cir.1978). However, the *Stanford* case points out that a general request, for example, for "all documents collected or received in connection with the investigation of antitrust violations" would be, in effect, a disclosure of the grand jury proceedings. In a footnote the Seventh Circuit explained that this means that when documents are significant only because they were before the grand jury, they may be covered by 6(e). Documents created for purposes other than the grand jury investigation are more likely to be useful for purposes other than revealing what occurred before the grand jury.

The traditional reasons for grand jury secrecy are: (1) to prevent the accused from escaping and from tampering with witnesses; (2) to protect the reputation of

an accused who is not indicted; (3) to encourage witnesses to appear and speak freely; and (4) encourage jurors to engage in uninhibited investigation and deliberation. *United States v. Malatesta*, 583 F.2d 748 (11th Cir.1978). Thus, when the purposes of the rule are not involved, then the rule should not be either. A balancing test is used if the purposes of the rule would be affected. The party seeking the information must show a need greater than the need for secrecy.

Applying these principles, the Court finds that the following items from the "grand jury inventory" would require a showing of "particularized need" sufficient to overcome the reasons for secrecy: (See above list) numbers 2, 6, 11, 12, 24 and 29.

*Assuming relevancy,* the remaining items are discoverable. They do not reflect the inner workings of the grand jury. *Fund for Constitutional Government, supra.* They were not generated by the grand jury. *In re Grand Jury Matter, supra.* Some of the remaining documents would have had their origin in prior investigations independent of the grand jury proceeding. The testimony or data sought is requested for its own sake rather than to learn what transpired before the grand jury.

However, the Court finds that, based on the listing, items number 3, 4, 14, 20 and 26 are probably not relevant and probably would not lead to relevant evidence. Mr. Brown will not be required to produce these documents or things absent an additional showing of relevancy.

Darrell Brown also raises the "work product" privilege. Some items may involve the "mental impressions, conclusions, opinions, or legal theories" of Darrell Brown. These would include numbers 1, 6, and possibly 30. In addition, Mr. Brown's mental impressions and conclusions are probably not relevant to any issue in this lawsuit and he will not be required to produce the things falling within these item numbers, at least without an additional showing of relevancy. Since it would appear that they would be relevant or at least might lead to relevant evidence, Brown will produce, upon request

by any party, statements made by the parties and recorded or otherwise reproduced by Brown. These may be included in items number 2, 9, 15, 19, 22 and 25.

■ Robinson and Dill also assert that plaintiff is attempting to use Brown as an expert witness on the issue of "probable cause." Therefore, they assert, they are entitled to discover the facts and grounds of Brown's opinion. However, it is not at all clear that the existence of probable cause is properly the subject of expert testimony. Whether scientific, technical or other specialized knowledge would help a jury determine whether probable cause exists is problematic. Thus, Brown will not be required to disclose his mental impressions and conclusions on this basis.

To summarize, Mr. Brown will not be required to produce the documents and things listed in the Grand Jury Inventory set forth above categorized under numbers 2, 6, 11, 12, 24 and 29 without a showing of "particularized need" sufficient to overcome the reasons for secrecy of grand jury proceedings described above. He will not be required to disclose the information categorized in numbers 1, 3, 4, 6, 14, 20, 26 and 30 because some of these items may cover material which is the work product of Mr. Brown but, in any event, would not appear to be relevant or lead to relevant evidence. If the statements of any of the parties to this action are contained under items 2, 9, 15, 19, 22 and 28, Mr. Brown will produce them upon request.

C. Plaintiff's Motion to Compel Defendants to Produce Index and Summaries.

■ By orders dated April 5 and May 11, 1983, this Court ordered defendants to produce, in response to interrogatories propounded, the investigative files of the Pulaski County Sheriff's Office in relation to the arrest of plaintiff on August 30, 1982, and January 30, 1983. These files have been produced, except that defendants have refused to supply the index to the files and certain summaries of the evidence contained therein. In their response to the motion to compel, the defendants advise

that the index was not produced through inadvertence and that it would be supplied. However, they object to disclosure of the summaries on the ground of executive privilege. The factors to consider when a claim of executive privilege is raised are: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual material or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other sources; and (10) the importance of the information sought to the plaintiff's case. *Dos Santos v. O'Neill*, 62 F.R.D. 448 (E.D.Pa.1974), *quoting Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa. 1973). *Dos Santos* was a civil rights action.[1]

■ Factors (1) and (2) do not weigh against disclosure as the file itself has already been disclosed. Plaintiff is no longer an actual or potential criminal defendant, and the investigation has been completed, and thus (5) and (6) militate in favor of disclosure. There are no disciplinary proceedings contemplated (7). Plaintiff's suit appears to be brought in good faith (8). The summaries cannot be obtained by other means (9). The file is not easily understood without the summaries (10), as Sheriff Rob-inson admitted during Darrell Brown's deposition.

Only factors (3) and (4) would weigh against disclosure, although the summaries are factual predominantly, rather than evaluative.

Plaintiff argues that (1) the summaries are purely factual in nature; (2) the "opinions and recommendations" of defendants are discoverable anyway because defendants' mental state, *i.e.*, "good faith" is the crucial factor in the case, and (3) defendant Robinson admitted the summaries were necessary to understand the file. In light of these considerations, the Court finds that disclosure of the summaries is justified *in toto* and defendants will be required to produce them.

An order will be entered in compliance with the rulings made above.

---

1. There are many cases dealing with executive privilege, *see digest key number 1600.3 Federal Civil Procedure*, but most are so vaguely worded and generalized as to not be of much precedential support. The *Frankenhauser* and *Dos Santos* cases are the most helpful.

For an *excellent* discussion of discoverability of privileged matter, see the "Special Master's Guidelines For the Resolution of Privilege Claims" in *United States v. American Tel. & Tel. Co.*, 86 F.R.D. 603 (D.D.C.1979) particularly Guidelines No. 21, No. 22.