**Salvatore DiBELLA, Plaintiff,**

v.

**The COUNTY OF SUFFOLK, STATE OF NEW YORK, Francis J. Leonard, Frank Leake, Leonard Forte, Gerald Giammatteo and the District Attorney of Suffolk County, Defendants.**

**No. CV 80–467.**

United States District Court,
E.D. New York.

Nov. 15, 1983.

Levy, Feder & Becker, P.C., Brooklyn, N.Y., for plaintiff; Frederick Feder, Brooklyn, N.Y., of counsel.

David J. Gilmartin, Suffolk County Atty., Hauppauge, N.Y., for defendants; V. Anthony Maggipinto, Hauppauge, N.Y., of counsel.

Sullivan, Spota, Malito & Mazzei, Mineola, N.Y., for defendants, Francis J. Leonard, Frank Leake, and Gerald Giammatteo; Gerard B. Sullivan, Mineola, N.Y., of counsel.

Valdas C. Duoba, East Northport, N.Y., for defendant Leonard Forte.

BARTELS, District Judge.

On March 23, 1977, the plaintiff, Salvatore DiBella, an operator of a mobile catering business, was arrested, without a warrant, by the defendant detectives of the County of Suffolk, Francis J. Leonard, Frank Leake, Leonard Forte, and Gerald Giammatteo, for the misdemeanors of promotion of gambling and possession of gambling records. Because of delay in prosecution, the records in the case were inadvertently destroyed and in March, 1979, two years later, the charges were dismissed. Thereupon DiBella brought an action under 42 U.S.C. § 1983, seeking ordinary and punitive damages, charging these

four detectives with false arrest and malicious prosecution in that there was no probable cause for the arrest or the filing of the charge.

Plaintiff claims that he was not engaged in illegal activities and that he simply set up a "triple pool" with 2 to 10 of his regular customers with $2 bets, which he recorded and thereafter deposited the same in an Off Track Betting parlor, for which he received OTB tickets. It is his claim that his action was in all respects legal. Defendants contend that from their observation for three days of plaintiff's activities while he went around his route, his conduct was such that they had reasonable cause to believe that he in fact was engaging in bookmaking, in violation of the penal law, and keeping records of the same. The ultimate and crucial issue in the case is not whether plaintiff was engaged in illegal bookmaking but whether these officers had reasonable cause to believe that plaintiff was so engaged. Section 140.10 of the New York Criminal Procedure Law, dealing with arrests without a warrant, provides that

> a police officer may arrest a person for: (a) Any offense when he has reasonable cause to believe that such person has committed such offense in his presence
> . . . .

See *Benjamin v. United States,* 554 F.Supp. 82, 85 (E.D.N.Y.1982); *Broughton v. State,* 37 N.Y.2d 451, 456–58, 373 N.Y. S.2d 87, 335 N.E.2d 310, *cert. denied sub nom., Schanbarger v. Kellogg,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975); Restatement (Second) of Torts §§ 35, 121 (1965).

At the trial the defendants sought to introduce the testimony of David Freundlich, an Assistant District Attorney for Suffolk County for ten years and Chief of the Rackets Bureau for that County, as an expert on what constitutes probable cause for arrest for bookmaking and, secondarily, for illegal gambling. Defendants argue that, based upon Freundlich's experience with gambling, he could testify whether the defendants had reasonable cause to

believe that DiBella had committed an offense, such as engaging in illegal gambling prior to his arrest. Plaintiff has challenged the admissibility of such expert testimony as going to the ultimate issue and not being otherwise helpful to the jury's understanding of the evidence.

The offer of Freundlich's testimony as an expert presents several questions including the primary issue as to whether his testimony is permissible under Rule 704 of the Federal Rules of Evidence, even though it goes to the "ultimate issue." Rule 704 reads:

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

In its Note to Rule 704, the Advisory Committee explains the parameters of Rule 704 as follows:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria.

Rule 701 allows lay witness opinion testimony only where it is both rationally based and helpful to a clear understanding of the witness' testimony. Rule 702 allows experts to give opinion testimony in instances where some sort of specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."

In this circuit it has been held that expert witnesses could not be called to instruct the jury as to applicable principles of law. In *Marx & Co., Inc. v. Diners' Club, Inc.,* 550 F.2d 505 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977),

involving a contract for the registration of securities, the court prohibited the testimony of an attorney as an expert as to "the legal standards which he believed to be derived from the contract and which should have governed Diners' conduct." 550 F.2d at 509. Judge Gurfein pointed out:

> The admission of such testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case. McCormick on Evidence, § 12, at 27. It is for the jury to evaluate the facts in the light of the applicable rules of law, and it is therefore erroneous for a witness to state his opinion on the law of the forum.

*Id.* at 510. He added:

> we must be especially careful not to allow trials before juries to become battles of paid advocates posing as experts on the respective sides concerning matters of domestic law.

*Id.* at 511.

*Marx* has been followed in *FAA v. Landy,* 705 F.2d 624, 632 (2d Cir.1983) (the testimony of a former FAA District Office Supervisor as to industry practice and FAA policy as reflected in Advisory Circulars properly excluded as otherwise intrusive into the province of court and jury), and in *United States v. Ingredient Technology Corp.,* 698 F.2d 88, 96–98 (2d Cir.1983) (the testimony of two of the defendants' expert witnesses as to interpretation of treasury regulation properly excluded since within the domain of the court). *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 505 F.Supp. 1313, 1330–34 (E.D.Pa.1980); Pratt, *A Judicial Perspective on Opinion Evidence Under the Federal Rules,* 39 Wash. & Lee L.Rev. 313, 319 (1982); Stern, *Toward a Rationale for the Use of Expert Testimony in Obscenity Litigation,* 20 Case W.Res.L.Rev. 527, 546 (1969); Note, *United States v. Garber (607 F.2d 92): The Propriety of Expert Legal Testimony,* 26 St. Louis U.L.J. 447 (1982); 7 Wigmore, *Evidence* § 1952 (Chadbourn rev. 1978). We believe these authorities are controlling.

Although an opinion otherwise admissible is not barred because it includes an ultimate issue to be decided by the jury, there are a number of other reasons why Freundlich's testimony as an expert should be barred. The question as to whether an officer had reasonable cause to believe that DiBella had committed an offense is hardly susceptible of expertise because there is no stable pattern of circumstances concerning the officer's conduct from which expertise may be derived. In the last analysis, the expert's opinion must be permeated with a number of hearsay statements and also predicated upon what a hypothetical reasonable man would do under the circumstances. With such a standard the jury is quite familiar and needs no help from an expert. Freundlich never made an arrest and had no sophistication upon the subject. Moreover, no opportunity was offered to the plaintiff for pretrial discovery concerning Freundlich's qualification as an expert as required by Fed.R.Civ.P. 26(b)(4). He simply was not an expert and was attempting at the same time to render a legal opinion.

The only case discovered addressing this particular issue was *McArthur v. Robinson,* 98 F.R.D. 672 (E.D.Ark.1983). That case involved a § 1983 action arising from an alleged unlawful arrest by the defendants. Both sides sought discovery of one Darrell Brown, who had been a Special Prosecutor assisting a grand jury investigation of the events leading to the plaintiff's arrest. The defendants asserted that the plaintiff was trying to use Brown as an expert witness on the issue of probable cause and, therefore, they were entitled to discover the facts and grounds of Brown's opinion. The court denied the request with the short statement that:

> it is not at all clear that the existence of probable cause is properly the subject of expert testimony. Whether scientific, technical or other specialized knowledge would help a jury determine whether probable cause exists is problematic.

*Id.* at 678.

Although expert testimony as to *modus operandi* is admissible, "probable cause" is

**154**

not a *modus operandi* but an appraisal of conduct, which differs depending upon the circumstances. *See United States v. Jackson,* 425 F.2d 574 (D.C.Cir.1970); *see also* Note, *Criteria for Admissibility of Expert Opinion Testimony on Criminal Modus Operandi,* 1978 Utah L.Rev. 547. Freundlich's opinion, in addition, would be obviously biased because he and the defendants were employed by the same employer. However, bias alone of a witness does not bar his testimony. *See* Fed.R.Evid. 601; 2 Wigmore, *Evidence* § 576, at 817 (Chadbourn rev. 1979). The weight of such testimony would be emasculated by a "strict scrutiny" instruction of the court; consequently, if otherwise admissible, such testimony would be of little help to the jury.

In *United States v. Bronston,* 658 F.2d 920 (2d Cir.1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982), an attorney was convicted of two counts of mail fraud based on his breach of the duty of loyalty to his firm's clients. At trial, the defendant sought to introduce the expert testimony of another partner in the defendant's law firm for the purpose of discussing the ultimate question involved, which was whether Bronston's conduct amounted to a breach of his fiduciary duty. The court refused to allow this testimony at trial and the Court of Appeals affirmed remarking:

> As a member of Bronston's own law firm Freund (the expert witness) could hardly be labelled impartial. Moreover his testimony would in substance have conveyed nothing more to the jury than his "general belief as to how the case should be decided." *Marx & Co. v. Diners' Club, Inc.,* 550 F.2d 505, 510 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977). This was a matter within the jury's exclusive province.

658 F.2d at 930. Freundlich's testimony would be tantamount to an opinion of no liability by the defendants themselves and would add nothing more to the jury than his "general belief as to how the case should be decided." *Marx,* 550 F.2d at 510 (quoting McCormick on Evidence, § 12 at 26–27).

In sum, the court concludes that Freundlich's testimony is not admissible under Rules 701, 702 and 704, Fed.R.Evid.

SO ORDERED.